2007 OK CIV APP 110

**In the Matter of the GUARDIANSHIP OF S. M., a Minor Child.**

**Zach McCain, Appellant,**

v.

**James and Star Bradford, and The State of Oklahoma, Appellees.**

**No. 104,718.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 12, 2007.

Christian Henry, Oklahoma City, OK, for Appellant.

Orenthel Denson, Denson and Haworth Law Firm, L.L.P., Oklahoma City, OK, for Appellees, James and Starr Bradford.

Leah Edwards, Assistant District Attorney, Chickasha, OK, for Appellee, State of Oklahoma.

Spencer F. Schroeder, Horn and Schroeder, L.L.C., Chickasha, OK, for Minor Child.

ROBERT DICK BELL, Judge.

¶ 1 Appellant, Zack McCain, the biological father (Father) of the minor child S.M., a deprived child, appeals the trial court's order granting a kinship guardianship and custody of S.M. to the child's paternal aunt and uncle, Appellees, James and Starr Bradford. We hold the trial court's order fails to comply with 10 O.S.Supp.2006 § 7003–5.5(C)(8) and reverse. The matter is remanded to the trial court with instructions to enter an order in compliance with § 7003–5.5(C)(8).

¶ 2 S.M. was born on April 12, 2004. The Oklahoma Department of Human Services (DHS) assumed emergency custody of S.M. in July 2004. In August 2004, the State of Oklahoma (State) filed a petition alleging the minor child was deprived because of domestic violence in the home. Father entered a "no contest plea" to the petition and the natural mother of the child stipulated to the petition. S.M. was adjudicated deprived and was placed in kinship foster care with Appellees. Starr Bradford is Father's sister.

¶ 3 The trial court entered a dispositional order in October 2004, imposing an Individualized Service Plan (ISP) upon the mother and Father. Mother made no attempts to comply with the order and failed to appear for the review hearing.

¶ 4 In December 2005, the State filed a petition to terminate both the mother and Father's parental rights. State's petition alleged abandonment of S.M. by her parents and that S.M. had been in foster care for 15 out of the most recent 22 months preceding the filing of the petition and that conditions which led to the deprived adjudication had not been corrected. In the meantime, Father completed some portions of his ISP. As a result, S.M. was placed in Father's home for a brief reunification period from October 2006 through December 28, 2006.

¶ 5 On December 28, 2006, Father called the police and reported a domestic disturbance involving him and his girlfriend. He stated it was just an argument, and he was acting in the manner instructed in one of his ISP classes. S.M. was removed from Fa-

ther's home and returned to Appellees' home. Supervised visitation between Father and S.M. was ordered.

¶ 6 On February 22, 2007, Appellees filed a petition for their appointment as guardians of the person and estate of S.M. pursuant to Title 30 of the Oklahoma Statutes. Notice was provided to both parents and a hearing was held on June 4, 2007. At the hearing, the trial court converted Appellees' guardianship proceeding into a kinship guardianship proceeding under § 7003–5.5(C)(8). Father appeared at this hearing in person and with counsel.

¶ 7 At the hearing, a DHS case worker testified that Father failed to work on the dispositional plan and recommended the kinship guardianship. She suggested supervised visitations between Father and the child and a counselor who could assist the child with her "difficulties" during visitation. Father testified he did not want custody of S.M. at the present time, but wanted the opportunity to regain custody of S.M. after overcoming his current financial difficulties. Father stated he was incarcerated in federal prison for attempted murder and released in 2003. He admitted he did not frequently visit with the child, but claimed that his sister prevented such visitations. Father was sporadically employed and had a suspended driver's license. He had out-of-state warrants for his arrest. Father also admitted he was temporarily living with his mentally unstable and depressed girlfriend, with whom he had the altercation.

¶ 8 Appellees testified they are the only parents S.M. has ever known and they love her as if she were their own child. Appellees related S.M. behaved in a frightened manner when Father's name was mentioned and that the child did not want to be near Father. Notwithstanding, Appellees testified they would cooperate with court ordered visitation. They also testified they were willing to serve as her guardians and felt the guardianship would offer S.M. permanency and thus, would be in S.M.'s best interests.

¶ 9 A Court Appointed Special Advocate (CASA) recommended the guardianship. The attorney for the child pointed out there was no evidence that the parents are presently able or in the foreseeable future able to provide proper care for the child. The child's attorney recommended the guardianship asserting the elements of the statute have been proven with the requisite evidence and that there was no evidence presented the parents are presently able or in the foreseeable future able to provide proper care for the child. At the conclusion of the hearing, the trial court ordered the kinship guardianship. On May 8, 2007, the trial court entered its order granting the kinship guardianship to Appellees and Father appealed.[1]

¶ 10 Section 7003–5.5 addresses the dispositional orders that may be entered by a trial court after a child has been adjudicated deprived. Section 7003–5.5(C)(8) provides the procedure to be followed when a kinship relation, who has acted as the deprived child's foster parent, seeks guardianship of the child. The Legislature explained the intent of the kinship guardianship procedure as follows:

When reunification of the family is not recommended or possible, as determined by the court, the court may order a child's permanent care and custody transferred to a kinship guardian subject to residual parental rights and responsibilities and subject to such orders of the court as deemed necessary for the health, safety or welfare of the child.

*See* § 7003–5.5(C)(8)(a).

¶ 11 Unlike the termination of parental rights, the appointment of a kinship guardian shall not affect or impair the visitation rights of a parent unless otherwise provided by the court. *See* § 7003–5.5(C)(8)(j). However, unlike a Title 30 guardianship, which may be terminated by a parent upon certain circumstances,[2] the Title 10 kinship guardianship

---

1. Although provided with proper notice of the hearing, the natural mother did not appear through counsel or in person at the kinship guardianship hearing. She similarly did not appeal the trial court's order.

2. A natural parent who seeks to terminate a Title 30 guardianship of a child need only show the impediments that led to the imposition of the guardianship have been removed, or that the reasons for which the guardianship was estab-

statute does not provide a procedure for a parent to petition the court to terminate the kinship guardianship. *See* § 7003–5.5(C)(8)(h). Thus, the kinship guardianship is a permanent placement until the statutory grounds for termination are met.

¶ 12 Pursuant to § 7003–5.5(C)(8)(c), the petition for kinship guardianship shall allege the following six elements:

(1) the child is in the legal custody of the Department,

(2) more than twelve (12) months have passed since the date of the dispositional order placing such child in the legal custody of the Department,

(3) the parents of the child are presently and for the foreseeable future unable to provide proper and adequate care for the child,

(4) the prospective kinship guardian consents to the appointment,

(5) the child has resided with the kinship foster parent and there exists a loving and emotional tie between the child and the kinship foster parent, and

(6) it would be in the best interests of the child for the petition to be granted.

¶ 13 If, in a non-consensual proceeding, the trial court finds these elements have been proved with clear and convincing evidence, then the trial court is directed to grant the petition. *See* § 7003–5.5(C)(8)(f). The trial court is also directed to order an annual review and submission of records and reports by the kinship guardian unless the parties and the court agree "such reviews are not necessary to serve the best interests of the child." § 7003–5.5(C)(8)(i).

¶ 14 Father asserts the trial court's order is fundamentally deficient to grant a kinship guardianship because it failed to identify the specific findings of fact or law required by § 7003–5.5(C)(8). This is an issue of first impression. Because the imposi-

tion of a kinship guardianship directly interferes with Father's fundamental right to rear his child, we hold a strict-scrutiny analysis applies.

Strict construction favors the rights of natural parents when the controversy is with one who seeks to destroy the parental status. Parents have a fundamental, constitutionally-protected interest in the continuity of the legal bond between themselves and their children. The integrity of familial status is a value to be regarded with great solicitude.

*Matter of Adoption of V.A.J.,* 1983 OK 23, ¶ 6, 660 P.2d 139, 141.

¶ 15 In the interest of protecting both parent and child, the Legislature has mandated a procedure that must be followed and the elements that must be found by the trial court, with clear and convincing evidence, before the trial court is authorized to impose a kinship guardianship. Applying a strict-scrutiny analysis, we find the trial court's order under review failed to comply with the mandates of the statute.

¶ 16 We acknowledge the trial court's order finds "By clear and convincing evidence the petition of James and Starr Bradford for kinship guardianship is granted," and recites it is granted "Pursuant to Title 10, 7003–5.5." However, neither the conclusory statement about the applicable law nor the reference to the petition cure the deficiency. We hold in this manner because the instant petition failed to allege the elements specified at § 7003–5.5(C)(8); instead, the petition recites the necessary allegations for the imposition of a guardianship under Title 30.

¶ 17 We conclude the challenged order fails to state the statutory elements that must be proved with clear and convincing evidence to warrant the imposition of the kinship guardianship. Consequently, we hold the order is fatally deficient under the statute. The trial court's order granting the kinship guardian-

lished no longer exist. *In the Matter of the Guardianship of M.R.S.,* 1998 OK 38, 960 P.2d

357; *see also* 30 O.S.2001 § 4–804.

ship is therefore reversed. Because the transcript of the hearing contains clear and convincing evidence supporting the underlying statutory elements, this matter is remanded to the trial court, not for a new trial, but with instructions for the trial court to enter a proper final order correcting the deficiencies described herein.

¶ 18 Because we reverse and remand, it is unnecessary to address Father's remaining assignment of error.

¶ 19 REVERSED AND REMANDED.

HANSEN, P.J., and BUETTNER, J., concur.